<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

RODNEY R. ROBERTS,                 :
                                               Civil Action No.
                Plaintiff,         :           11-1198 (SDW)

                v.                 :

JENNIFER VELEZ et al.,             :           **O P I N I O N**

                Defendants.        :
_____


**Wigenton**, District Judge:

    This matter comes before the Court upon Plaintiff's
submission of a civil complaint ("Complaint") and his application
to proceed in this action <u>in forma pauperis</u>.  Based on
Plaintiff's affidavit of indigence, the Court will grant
Plaintiff's applications to proceed <u>in forma pauperis</u>, pursuant
to 28 U.S.C. § 1915(a) (1998), and will order the Clerk to file
the Complaint.

I.  **BACKGROUND**

    The Complaint asserts that, starting from 2006 and until
early 2010, Plaintiff was confined at the Special Treatment Unit
at Kearney, New Jersey ("Kearney Facility"),[1] and – during that

_____

    [1] Plaintiff is an individual involuntarily committed
pursuant to the Sexually Violent Predator Act ("SVPA"), <u>N.J.S.A.</u>
30:4-27.24, <u>et</u> <u>seq</u>.

period of his confinement – he was periodically evaluated by
medical professionals in 2006, 2007, 2008 and 2009 for placement
in various therapeutic treatment modules.  See Docket Entry No.
1, at 4-5.  These medical professionals determined that Plaintiff
was fit to participate in some but not in all treatment modules
administered at the Kearney Facility.  See id.  Plaintiff, who
preferred to attend all modules administered at the Kearney
Facility, concluded that these medical determinations were
discriminating and biased.  See id.

It appears that, in 2010, Plaintiff was transferred from the
Kearney Facility to another facility, and – later that year –
from that other facility to a unit within a "lock-up" facility
located in Avenel, New Jersey ("Avenel Unit").  See id. at 5-6.
Plaintiff: (a) asserts that the Avenel Unit has been populated by
other civilly committed individuals; and (b) notes that he would
have preferred to be housed among the general prison population
of a prison facility, seemingly to avoid the stigma Plaintiff
associates with being housed among civilly committed individuals.
See id. at 6.  Plaintiff also asserts that, since some point in
2010, Plaintiff was denied all forms of therapeutic treatment on
the grounds of Plaintiff being housed at the Avenel Unit; he
maintains that the decision to deny him all forms of treatment
was made by Defendants Paolillo, Canataro and certain unspecified
members of the Avenel Unit Human Services. See id.

Plaintiff asserts that: (a) his treatment at the Kearney Facility was inadequate;[2] (b) his evaluations at the Kearney Facility violated Plaintiff's equal protection rights because Plaintiff was allowed to participate only in some, rather than all, modules; (c) his housing at the Avenel Unit violates his procedural due process rights; and (d) his lack of any therapy since 2010 also violates his rights.

II.      **STANDARDS OF REVIEW**

A district court is required to review a complaint in a civil action where the litigant is proceeding in forma pauperis. Specifically, the court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B). Accordingly, because Plaintiffs are proceeding in forma pauperis in both above-captioned matters, their complaints are subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007);

---

[2] Plaintiff's action challenging the adequacy of treatment at the Kearney Facility is among consolidated cases currently pending before Judge Dennis M. Cavanaugh. See Alves et al. v. Ferguson et al. ("Alves"), 01-0789 (DMC) (N.J.D.).

see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).
The Court must "accept as true all of the allegations in the
complaint and all reasonable inferences that can be drawn
therefrom, and view them in the light most favorable to the
plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902,
906 (3d Cir. 1997). The Court need not, however, credit a pro se
plaintiff's "bald assertions" or "legal conclusions." Id.

Moreover, recently, the Supreme Court clarified the standard
for summary dismissal in Ashcroft v. Iqbal, 129 S. Ct. 1937
(2009), stressing that Rule 8(a)(2) of the Federal Rules of Civil
Procedure mandates a complaint to contain "a short and plain
statement of the claim showing that the pleader is entitled to
relief." Fed.R.Civ.P. 8(a)(2). Citing its prior decision in
Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the
proposition that "[a] pleading that offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting
Twombly, 550 U.S. at 555), the Supreme Court identified two
working principles underlying the failure to state a claim
standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions. Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... . Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions. Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.

> Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S. Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[3] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires a district court to

---

[3]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

conduct the two-part analysis set forth in <u>Iqbal</u> when presented

with a motion to dismiss, specifically:

> First, the factual and legal elements of a claim should be
> separated.  The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard
> any legal conclusions. [<u>Iqbal</u>, 129 S.Ct. at 1949-50].
> Second, a District Court must then determine whether the
> facts alleged in the complaint are sufficient to show that
> the plaintiff has a "plausible claim for relief." [<u>Id</u>.]  In
> other words, a complaint must do more than allege the
> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts.  <u>See</u> <u>Phillips</u>,
> 515 F.3d at 234-35.  As the Supreme Court instructed in
> <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show [n]'-'that
> the pleader is entitled to relief.'"  <u>Iqbal</u>, [129 S.Ct. at
> 1949-50].  This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense." <u>Id</u>

<u>Fowler</u>, 578 F.3d at 210-211.

III.     <u>**SECTION 1983 ACTIONS**</u>

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff

must allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48

(1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.        **DISCUSSION**

    A.    **The New Jersey Sexually Violent Predator Act**

The New Jersey SVPA, <u>N.J.S.A.</u> 30:4-27.24 <u>et seq.</u>, provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP").[4] <u>N.J.S.A.</u> 30:4-27.26.  The New Jersey Department of Corrections ("DOC") operates the facilities designated for SVPs, <u>N.J.S.A.</u> 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment.  <u>N.J.S.A.</u> 30:4-27.34(b). The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with of the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L. 1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and

---

[4]  The SVPA defines a SVP as

    a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

<u>N.J.S.A.</u> 30:4-27.26(b).

specific characteristics of, and treatment protocols related to, sexually violent predators."[5]   N.J.S.A. 30:4-27.34(d).

###   B.   **Transfers from One Facility to Another**

Plaintiff asserts that his rights were violated by transfers from the Kearney Facility to another facility, and then to the Avenel Unit, a unit within a "lock-up" facility having a more restrictive daily regime than that employed at the Kearney Facility.[6]

In Kansas v. Hendricks, 521 U.S. 346 (1997), the Supreme Court of the United States examined the conditions of confinement mandated by Kansas' Sexually Violent Predator Act ("Kansas Act"), a legislation substantively indistinguishable – for the purposes of this Court's analysis – from the SVPA.   The Kansas Act called for confinement of sexually violent predators in secure facilities that could be, regime- and conditions-wise, analogized

---

[5]   In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs.   N.J.S.A. 30:4-27.25.   The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed.   Id.

[6]   Plaintiff paraphrased this line of allegations in terms of his right to stay at the Kearney Facility.   However, inmates have no due process right to choose their specific place of confinement.   See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976).   Thus, Plaintiff's displeasure with being housed at the Avenel Unit rather than in the Kearney Facility (or his displeasure with being housed among civilly committed individuals rather than among general prison population) is not actionable.

to a correctional facility.[7]  See id., 521 U.S. at 363-64.  The
Court, however, concluded that housing of civilly committed
individuals at the segregated prison-like unit was not a
violation of these individuals' constitutional rights, since the
conditions within the unit were essentially the same as those
existing in mental hospitals for involuntarily committed persons
(and since the residents of the segregated unit were receiving
mental treatment under the language of the Kansas Act).  See id.,
521 U.S. at 363, 364, 365-368.  Consequently, the Court held that
involuntary confinement under the Kansas Act was not
unconstitutional with regard to civilly committed individuals
confined within prison grounds, so long as such civilly committed
individuals were: (a) segregated from the general prison
population; and (b) afforded a treatment comparable to that
provided to other civilly committed persons confined in treatment
units.  Id., 521 U.S. at 368-69; see also Seling v. Young, 531
U.S. 250, 261062 (2001) (revisiting the same issue in detail upon
examination of the State of Washington's version of the SVPA and,
in addition, holding that placement of civilly committed
individuals in a unit located within prison grounds and having

---

[7]  In fact, while deciding Kansas v. Hendricks, the Supreme
Court was unambiguously advised that the sexually violent
predators in Kansas were to be held in a segregated unit within
an actual prison.

prison-like administrative regime did not violate the Double Jeopardy Clause was without merit).

In light of the Supreme Court precedent unambiguously established in Hendricks and Seling, Plaintiff's allegations based on the fact of his transfer to the Avenel Unit administered similarly to a correctional facility (or Plaintiff's allegations based on his housing among civilly committed individuals rather than among prison general population) are facially without merit and should be dismissed, with prejudice, for failure to state a claim upon which relief can be granted.  See In re Commitment of W.Z., 173 N.J. 109 (2002) (same); accord United States v. Comstock, 130 S. Ct. 1949 (2010) (addressing a federal statute under which federal SVPs – whose prison term expired and civil commitment begun – continued being housed within the same prison facility where they have actually served their sentences).

    **C.**    **Treatment/Therapy at the Kearney Facility**

Plaintiff also asserts that his rights were violated when he was evaluated by medical professionals and determined fit to participate in some, but not all, therapeutic modules administered at the Kearney Facility; in connection with this line of challenges, Plaintiff also maintains that the limited benefits of the modules in which Plaintiff was fit to participate

in did not allow Plaintiff to advance as much as Plaintiff hoped to advance.[8]

### 1.   Claims Based on 2006/2007 Events Are Time Barred

For purposes of the statute of limitations, Section 1983 claims are characterized as personal injury actions.  See Wilson v. Garcia, 471 U.S. 261, 275 (1983).  Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims.  See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989).

Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. See Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987).  "[A] federal cause of action accrues when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transp. Authority, 539 F.3d 199, 209 (3d Cir. 2008).

Here, the events of Plaintiff's evaluations and participation in therapeutic modules that took place prior to

---

[8] Plaintiff asserts that, over 6-year period of therapy, he advanced only two levels.

February 28, 2009, are time barred, since the Complaint submitted
in this matter was executed on February 27, 2011.[9]   Granted the
panoply of Plaintiff's actions commenced in this District during
the last decade (and, especially, during the last year), any
consideration associated with equitable tolling is facially
inapplicable to the Complaint at bar, since Plaintiff's prior
actions unambiguously indicates that Plaintiff could have
initiated the case at bar sooner had he wished to do so.

Therefore, all Plaintiff's challenges based on the events
that took place prior to February 28, 2009, will be dismissed
with prejudice, as time barred.

### 2.   Claims Duplicative of Those Litigated in <u>Alves</u>

The power of a federal court to prevent duplicative
litigation is intended "to foster judicial economy and
the 'comprehensive disposition of litigation,'" <u>Curtis
v. Citibank, N.A.</u>, 226 F.3d 133, 138 (2d Cir. 2000)
(quoting <u>Kerotest Manufacturing Co. v. C-O-Two Fire
Equipment Co.</u>, 342 U.S. 180, 183 (1952)), and "to
protect parties from 'the vexation of concurrent
litigation over the same subject matter.'"   <u>Id.</u>
(quoting <u>Adam v. Jacobs</u>, 950 F.2d 89, 93 (2d Cir.
1991)).

---

[9] Since Plaintiff is a confined individual, his mailings to
the Court are subject to the prisoners' mailbox rule, pursuant to
which pleadings are deemed filed at the time an inmate hand his
pleading to the facility officials for mailing to the court.
Although it is plausible that Plaintiff handed his Complaint to
Avenel Unit officials on the date later than the date affixed on
his Complaint, it is self-evident that Plaintiff could not submit
his Complaint at any prior date.  Reading these facts in light
most favorable to Plaintiff, the Court presumes -- without making
a factual finding to that effect -- that Plaintiff's instant
Complaint was "filed," within the meaning of the prisoners'
mailbox rule, on the date Plaintiff executed his Complaint.

Porter v. NationsCredit Consumer Disc. Co., 2003 Bankr. LEXIS 933, at *33 (Bankr. E.D. Pa. 2003).

Here, Plaintiff's claims alleging inadequacy of the therapeutic modules administered to him during his confinement at the Kearney Facility are already pending, for a number of years, before Judge Cavanaugh in Alves, 01-0789 (DMC) (N.J.D.). Therefore, this line of claims is wholly duplicative of the challenges currently litigated in Alves. Consequently, these claims are subject to dismissal, as duplicative.

### 3.  Equal Protection Claims Are Without Merit

Plaintiff also asserts that his rights were violated during his July 2009 medical evaluation, when Plaintiff was, allegedly, deemed fit to participate in some, but not all, therapeutic modules administered to the civilly committed individuals confined at the Kearney Facility.

The concept of equal protection, as embodied in the Due Process Clause of the Fifth Amendment, see Bolling v. Sharpe, 347 U.S. 497 (1954), has been construed to implicitly include an equal protection guaranty generally as broad as that of the Fourteenth Amendment, applicable to the states. See United States v. Milan, 304 F.3d 273, 281 n.6 (3d Cir. 2002) (citing United States v. Leslie, 813 F.2d 658 (5th Cir. 1987)), cert. denied, 538 U.S. 1024 (2003).

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. See City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996). Despite its sweeping language, though, "[t]he Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate. See Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976). Thus, discriminatory intent must be a motivating factor in the decision, even though it need not be the sole motivating factor. See Village of Arlington Heights, 429 U.S. at 265-66.

Once this intentional disparity in treatment is shown, a court will proceed to determine whether the disparity can be justified under the requisite level of scrutiny. See City of

Cleburne, 473 U.S. at 439-40; Plyler v. Doe, 457 U.S. 202, 216-17 (1982); Price v. Cohen, 715 F.2d 87, 91-92 (3d Cir. 1983), cert. denied, 465 U.S. 1032 (1984). In testing the validity of an official action that is alleged to deny equal protection, the action "is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." City of Cleburne, 473 U.S. at 439-40. The general rule gives way, however, when a statute classifies by race, alienage or national origin since these classifications "are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." Id. at 440.

Here, Plaintiff does not assert that he is a member of any suspect class or that he was discriminated as a member of that class, i.e., at no point the Complaint alleges that the Kearny Facility officials were discriminating a class of persons consisting of a certain race or gender, and that Plaintiff was discriminated among other members of the class.

Rather, Plaintiff asserts that he was "discriminated" by not being found, after a medical evaluation, fit to take each and every module administered by the Kearney Facility. However, Plaintiff's displeasure with the fact that he deemed unfit to participate in every possible module, while some civilly committed individuals might have been deemed fit to partake in

all modules, fails to assert that Plaintiff was similarly situated to these hypothetical individuals.  Indeed, the Complaint expressly states that participation in different modules was allowed on the bases of inmates' medical evaluations. The fact that Plaintiff's psychiatric evaluation determined him to be at a stage of mental advancement different from those of other inmates indicates that Plaintiff was not similarly situated to other individuals.  Simply put, the Court has no mandate to second-guess a medical determination.

Since the decision of Kearney Facility officials to assign differently-advanced individuals to different modules was rationally related to a legitimate state interest, their decision to allow Plaintiff to participate in some but not all available modules could not amount to a violation of Plaintiff's equal protection rights.  See Lada v. Del. County Cmty. College, 2009 U.S. Dist. LEXIS 91634, at *18 (E.D. Pa. Sept. 30, 2009) ("'Because this court can hypothesize a rational basis' for the challenged government action, plaintiff's equal protection claim must be dismissed") (quoting Mercatus Group LLC v. Lake Forest Hospital, 528 F. Supp. 2d 797, 817 (N.D. Ill. 2007)).

Therefore, Plaintiff's allegations asserting discrimination are without merit and will be dismissed with prejudice.

D.    **Complete Denial of Therapeutic Treatment in Avenel**

The Fourteenth Amendment guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  This due process guarantee has been interpreted to have both procedural and substantive components, with the latter protecting fundamental rights which are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed."  Palko v. Conn., 302 U.S. 319, 325 (1937).  Consequently, substantive due process protects the inmates' fundamental rights and, in addition, guards the inmates against government conduct which is so egregious that it "shocks the conscience," even if this conduct does not implicate any specific fundamental right.  See United States v. Salerno, 481 U.S. 739, 746 (1987).

The Supreme Court established that there exists a constitutionally protected right of mentally retarded persons confined at a state institution to minimally adequate treatment.  See Youngberg, 457 U.S. at 316, 319 and 322; see also Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002).  In Leamer, the Court of Appeals held that, since the New Jersey's statutory scheme for sex offenders was predicated on the inmate's response to treatment, that statutory regime created a fundamental due process liberty interest in treatment.  See Leamer, 288 F.3d at 545; accord Hendricks, 521 U.S. at 368-69 (inmates housed in

prison-like conditions must be afforded a treatment comparable to that provided to other civilly committed persons confined in treatment units); but see Bailey v. Gardebring, 940 F.2d 1150, 1153-54 (8th Cir. 1991), cert. denied 503 U.S. 952 (1992) (concluding that a sexually violent predator had no due process right to "psychiatric treatment to overcome a 'sexual offender condition'"); Semler v. Ludeman, 2010 WL 145275, at *26 (D. Minn. Jan. 8, 2010) (following Bailey for the conclusion that there was no "recognized constitutional right to effective 'treatment' in the context of civilly committed sex offenders" and citing Nicolaison v. Ludeman, 2008 WL 508549, at *8 (D. Minn. Feb. 11, 2008), the case finding that Youngberg "only recognized a right to 'minimally adequate' treatment that reduces the need for restraints [rather than a] comparable right to treatment that facilitates release").

This Court, being bound by the Court of Appeals' guidance in Leamer, finds that Plaintiff have substantive due process right in a treatment facilitating his release prospects.

The Fourteenth Amendment affords pretrial detainees and civilly committed individuals, such as Plaintiff, protections that are "at least as great as the Eighth Amendment protections afforded to a convicted prisoner." Natale v. Camden County Corr. Facility, 318 F.3d 575, 581 (3d Cir.2003) (quoting City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983)).

For the purposes of Eighth Amendment, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The Court of Appeals, however, clarified in Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326 (3d Cir. 1987), that the correctional personnel may manifest "deliberate indifference" by denying medical care if such "denial exposes the inmate 'to undue suffering or the threat of tangible residual injury." Id. at 346 (quoting Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976)). Moreover, in White v. Napoleon, 897 F.2d 103 (3d Cir. 1990), the Court of Appeals pointed out that the officials' acts effectively denying or delaying a prescribed medical treatment for non-medical reasons violate the requirements set forth by the Eighth Amendment. See id. at 110 ("'deliberate indifference to, and defiance of, explicit medical instructions, resulting in serious and obvious injuries' stated a violation of constitutional rights") (quoting Martinez v. Mancusi, 443 F.2d 921, 924-25 (2d Cir. 1970)); see also Lanzaro, 834 F.2d at 346 (deliberate indifference is demonstrated "[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs"); accord Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) ("Courts will disavow any attempt to second-guess the

propriety or adequacy of a particular course of treatment . . .
[which] remains a question of sound professional judgment.
Implicit in this deference to prison medical authorities is the
assumption that such informed judgment has, in fact, been made")
(internal quotation and citation omitted).

Here, Plaintiff asserts that, for three or four years (i.e.,
the period starting from some point in 2005-2006 and until late
2009 - early 2010), he was receiving a certain psychiatric
treatment at the Kearny Facility, and this treatment was
prescribed to Plaintiff by medical professionals who evaluated
him.  Plaintiff also asserts that, from 2010 and on, he was
denied this prescribed treatment for non-medical reasons (i.e.,
simply because of his housing arrangement, over which Plaintiff
had no control).  Being bound to presume these assertions as
true, the Court finds that Plaintiff duly alleged a violation of
his substantive due process rights under Leamer.  The Court,
therefore, will proceed Plaintiff's claim based on denial of
medical treatment at the Avenel Unit past the sua sponte
dismissal stage, and will direct Defendants to answer this
narrowly-tailored line of Plaintiffs' challenges.  See Fowler,
578 F.3d at 210-211 (detailing the plausibility standard).

**VI.        CONCLUSION**

For the foregoing reasons, Plaintiff's application to
proceed in this matter in forma pauperis will be granted.  All

Plaintiff's claims based on allegations other than complete denial of medical treatment will be dismissed, while Plaintiff's claims asserting complete denial of medical treatment will be proceeded past the <u>sua sponte</u> dismissal stage.

An appropriate Order accompanies this Opinion.


<u>s/Susan D. Wigenton</u>
**Susan D. Wigenton,**
**United States District Judge**

Dated: July 12, 2011